## HARDIN v. MELTON.

1. One is not a purchaser for valuable consideration without notice unless (1) he was without notice, and (2) has paid the purchase money. Where, therefore, he purchases for value without warranty, he is not entitled to this defence as against an encumbrance of which he had notice.

2. The plea of purchaser for valuable consideration without notice cannot avail against a judgment legally valid and having lien on the property.

3. A judgment entered and filed and regular in all particulars, except that the formula prescribed by law was not dated or signed by the clerk, is a valid judgment, having lien even as to third parties who subsequently purchased from the judgment debtor.

4. Under a call for creditors in an action for the administration of a decedent's estate, a judgment creditor who proves his judgment does not thereby lose or abandon the lien of his judgment on property not the subject of such action.

5. A judgment creditor accepted $500 from a clerk of court in release of any liability of the latter for failing properly to enter up the judgment. *Held*, that the judgment creditor did not thereby release the lien of her judgment nor estop herself from asserting it.

6. A levy being made under this judgment on property aliened by the judgment debtor, the purchasers instituted an action to enjoin. The Circuit Judge granted a non-suit, saying he thought there was no judgment. *Held*, that the judgment creditor was not estopped from afterwards asserting this judgment against subsequent purchasers.

7. A petition for rehearing cannot be granted unless it is shown that this court overlooked some fact or some question of law material to the case as presented by the appeal.

8. A question not passed upon in the Circuit decree, and no error alleged in the failure to consider it, is not before this court on appeal.

9. A judgment creditor has a right to levy and sell land covered by the lien of her judgment, but now owned by a third party, even though the assets of the original debtor, primarily applicable to this, the senior judgment, are sufficient to pay it.

Before NORTON, J., Chester, June, 1887.

This action was commenced January 20, 1887. The Circuit decree was as follows:

Ann E. Wright obtained judgment November 2, 1867, against C. D. Melton. C. D. Melton sold the real estate, the sale of which is sought to be enjoined in the present action, to G. W. Melton November 25, 1867, and as part of the purchase money G. W. Melton promised C. D. Melton to pay the Wright judgment, which he has never done, nor has he paid to C. D. Melton or his administrator the equivalent. Mrs. Wright was not a party to said promise; she neither gained nor lost any rights thereby. The promise had no relation to the land, except that if Mrs. Wright had chosen to levy her execution on it, G. W. Melton thereby lost his equity to compel her first to exhaust the property of C. D. Melton. C. D. Melton's right of legal action to enforce said promise was barred on November 25, 1877, six years after G. W. Melton's last acknowledgment of it, but the statute of limitations only barred the right of action, and the promise would, had G. W. Melton continued to own the land, have indefinitely prevented G. W. Melton from asserting his equity to postpone sale, as above stated. After said sale sundry other persons obtained judgment against C. D. Melton.

C. D. Melton died December 4, 1875. W. A. Clark is his administrator. Mary B., widow of C. D. Melton, purchased all of these junior judgments. G. W. Melton voluntarily conveyed the land, the subject of this action, to trustees for the use of his wife and children. Ann E. Wright levied her execution on the land. Two of the trustees commenced action to enforce the equity, to have the estate of C. D. Melton first exhausted; but on discovering what they supposed to be a fatal defect in the Wright judgment, they submitted to a non-suit. All three of the

trustees, one of whom was W. A. Clark, administrator of C. D. Melton, then filed a complaint, and sold without warranty, under order of court, the trust land to W. Holmes Hardin, who had notice of the Wright judgment, but not of the agreement that G. W. Melton was to pay it. He then really thought that the Wright judgment was invalid, but not by any misrepresentation of the trustees. His mistake as to the validity of the Wright judgment did not relieve the land from its lien, but shows his good faith. He gave a fair price for it, and paid one-third cash and gave his notes and mortgage for the balance. Before he paid the balance, he had notice of the agreement between the Meltons; but his purchase with notice of the Wright judgment and without warranty prevented him from successfully defending any action the trustees might have commenced against him for the purchase money, which was equivalent in law to being a *bona fide* purchaser for valuable consideration without notice. Plaintiff purchased the land from him *bona fide* for valuable consideration, though with notice.

The trustees sold without concealment or misrepresentation, and without warranty, the interests of their beneficiaries in the land, and hold the proceeds discharged of any liens upon, or defects in, the title to the land. They are not responsible to W. Holmes Hardin nor to his alienee, the plaintiff. Whether their title conveyed anything valuable or not, it conveyed whatever interest their beneficiaries had; that was all they sold; that was all W. Holmes Hardin bought. The said John J. McLure, Charles H. Alexander, and Washington A. Clark were, as trustees, improperly made parties; so, also, were their beneficiaries, Mrs. Margaret A. Melton, Lucius H. Melton, Charlie Nannette Melton, and Georgia Melton.

When Mrs. M. B. Melton discovered that she could not force Mrs. Wright to levy her execution on the land her husband had sold to G. W. Melton, in order to protect herself and enforce what she knew to be morally right between herself and the widow and children of her brother-in-law, G. W. Melton, she purchased the Wright judgment and sought to enforce it against the land for which her husband had never been paid, and which ought to have paid the Wright judgment. But she found this land in the

hands of plaintiff, purchaser from a *bona fide* purchaser without notice, whose equity is higher than hers, and who seeks by this action to prevent her selling said land under said judgment.

It is therefore ordered, decreed, and adjudged: 1. That as to the defendants, J. J. McLure, C. H. Alexander, and W. A. Clark, trustees, and their beneficiaries, Margaret A. Melton, Lucius H. Melton, Charlie Nannette Melton, and Georgia Melton, the complaint be dismissed, and that the plaintiff do pay their costs. 2. That the temporary injunction heretofore granted herein be made perpetual. 3. That the defendant, Mary B. Melton, do pay the costs of herself and the plaintiff. 4. That the other defendant, Washington A. Clark, do pay his own costs out of his intestate's estate in his hands.

The money paid by the clerk to Mrs. Wright was paid on the following receipt:

Received of T. F. Clinton, late clerk Court Common Pleas, Chester District, five hundred dollars, in full of all claims against him and his official sureties, by reason of his failure while clerk to attach his official signature and date of entry to a certain judgment in an action entitled Ann E. Wright, ex'x, v. C. D. Melton, pending at fall term, 1867; this payment not to confer any right of ownership or interest in the said judgment on said Clinton if the same can be successfully asserted as a judgment, but simply to compensate plaintiff therein for damages and delay by negligence.

JAS. F. HART,

Jan'y, 1882.                    *Attorney for A. E. Wright.*

*Messrs. Pope & Shand* and *J. S. Muller*, for appellants.

*Messrs. Giles J. Patterson* and *J. L. Glenn*, contra.

February 1, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The facts necessary to be stated in this case are as follows: In October, 1867, one Mrs. Ann E. Wright, as executrix of Dr. Sam'l Wright, obtained a judgment from the Court of Common Pleas for Chester County against Mr. C. D. Melton for nineteen hundred and seventy-nine dollars and thirty cents ($1,979.30).   At the time Mr. Melton

was seized and possessed of a house and some one hundred acres of land surrounding it, at or near the village of Chester. Shortly after this judgment was obtained, to wit, during the month of November thereafter, Mr. Melton sold the said real estate to his brother, G. W. Melton, for eight thousand dollars, taking four notes, due at different times, for the purchase money, and a mortgage of the premises to secure them, G. W. Melton agreeing to pay off certain judgments against the said C. D. Melton, including the Wright judgment, which, when paid, was to be regarded as payment *pro tanto* of the purchase money of the real estate aforesaid. After this a statement of these transactions was made between these parties, when it appearing that G. W. Melton had paid off all of the said judgments except the Wright judgment, which he then assumed, the notes for the purchase money were given up and the mortgage cancelled. The Wright judgment, however, was not paid then, nor has it since been paid.

After this, to wit, in 1875, G. W. Melton, by voluntary deed, conveyed the property to J. J. McLure, C. H. Alexander, and Washington A. Clark, in trust for the benefit of his wife and children. G. W. Melton took possession of the premises in 1867, at the time of his purchase, and remained in possession until his death in 1876, when he died, leaving his wife and children in possession under the trust deed aforesaid to McLure and others. C. D. Melton died in 1875, and W. A. Clark administered upon his estate. After this, Mrs. Wright had her judgment against Melton revived, with the force and effect of the original recovery, by regular process against the administrator, Clark, and in 1878 the sheriff of Chester County, under the direction of Mrs. Wright, levied upon the premises mentioned to satisfy said judgment, whereupon two of the trustees, McLure and Alexander, commenced action to restrain the sale of this property, upon the ground, among others, that the administrator of Melton, W. A. Clark, had assets sufficient to pay said judgment. In the progress of this case before his honor, Judge Pressley, upon an inspection of the record of the case of *Ann E. Wright, executrix,* v. *C. D. Melton,* certain defects were discovered which, in the opinion of his honor, prevented the alleged judgment obtained therein from having a lien upon the property of the said C. D.

Melton, the judgment debtor.   He, therefore, held that the plain-
tiffs had no valid ground for the relief asked in their complaint.
The plaintiffs thereupon took a non suit upon their own motion.
After this the said trustees instituted proceedings in the Court of
Common Pleas for Chester County to sell the trust property and
change the investment, to which proceeding Mrs. Wright was not
made a party.   Leave was granted, and shortly thereafter, in
1879, the trustees sold said property to one W. Holmes Hardin
for five thousand dollars, one-third cash and the remainder in
two notes, secured by a mortgage of the premises.   Mr. Hardin,
the purchaser, had information before his purchase of the exist-
ence of the Wright judgment, but he was advised by prominent
attorneys that the trustees' title would be good, and the trade was
completed, the trustees conveying to him without warranty.   He
afterwards, in 1881, sold to the present plaintiff for $6,000, who
bought with a knowledge of the Wright judgment.

　　After this Mr. Clark, administrator of estate of C. D. Melton,
finding it necessary to have the instruction of the court in the
administration of said estate, filed a complaint in 188   to that
end, and upon a call for creditors to establish their demands,
Mrs. Wright's judgment, with other junior judgments more than
sufficient to exhaust the assets, were presented.   The validity of
this judgment was contested by Mrs. Mary B. Melton, the assignee
of all of the junior judgments, and by the administrator, on ac-
count of certain defects appearing upon the record—the defects
being the absence of the date of the judgment on the margin of
the formula lodged in the clerk's office by the attorney of Mrs.
Wright, and also the absence of the clerk's official signature
thereon.   In every other respect the judgment was regular, in-
cluding the entry in the book of "Abstract of Judgments."   The
Circuit Judge held, however, that these defects were fatal, and,
therefore, that said alleged judgment could not rank as a judg-
ment in the settlement of the estate of C. D. Melton, taking pri-
ority according to its date.   On appeal to this court, this holding
was overruled, and the judgment of Mrs. Wright was sustained
as a valid judgment, and declared entitled to take rank as a judg-
ment against the assets of the deceased debtor.

　　After this Mrs. Mary B. Melton, who had bought the junior

judgments against the estate of her deceased husband, with the view, no doubt, to protect herself, then bought the Wright judgment from Watson, administrator *de bonis non* of Dr. Wright, Mrs. Wright, executrix, having in the meantime departed this life. After this purchase, Mrs. Mary B. Melton, assignee, directed that the Chester property be levied upon, which, being done, the plaintiff, James C. Hardin, purchaser from W. Holmes Hardin, commenced the action below, asking an injunction, with other relief, upon the grounds, among others, that the Wright judgment never had lien on the premises, and that the plaintiff was a *bona fide* purchaser without notice.

Judge Norton, who heard the case, made the temporary injunction, which had been granted at the institution of action, perpetual as to Mrs. Mary B. Melton, with costs, and dismissed the complaint as to the other parties, McLure, Alexander, Clark, trustees, and the beneficiaries under the trust deed. His honor, however, in his decree held the Wright judgment to be valid and with a lien on the land. He also found as matter of fact that W. Holmes Hardin bought with notice of said judgment, though he was misled as to its validity by the advice and opinion of others; he did not have notice of the agreement of G. W. Melton to pay this judgment. He found, too, that the plaintiff bought with notice of the judgment. But inasmuch as W. Holmes Hardin bought without warranty, and was, therefore, compelled to pay the purchase money whether the title was good or not, his honor held that in law these facts made the said Hardin occupy, in substance, the position of a *bona fide* purchaser without notice, and the plaintiff having bought from him, though with notice himself, yet that he was entitled to the protection which W. Holmes Hardin would have been entitled to as a *bona fide* purchaser without notice. Hence the order that the temporary injunction be made perpetual.

Mrs. Mary B. Melton and Clark, administrator, have appealed, raising substantially but one question, to wit, whether his honor erred in holding as matter of law, under the facts found by him, that W. Holmes Hardin was a *bona fide* purchaser without notice, and therefore entitled to protection against said judgment, which extended to his vendee, the present plaintiff. The respondent

seeks to sustain the decree upon other grounds than that upon which it is based by his honor, if that should prove insufficient, which grounds will be noticed at the proper place herein.

First, as to the question raised by the appellants. For the defence of *bona fide* purchaser to be effective, two things must appear : 1st. The purchaser must be without notice ; and 2nd. He must have paid the purchase money. Now, it might be possible in this case to consider the purchase money as paid, in view of the fact that W. Holmes Hardin had purchased without warranty, and was, therefore, bound beyond hope. But admitting, for the present, that such a condition amounted to payment, yet what becomes of the other necessary element in the plea, *i. e.*, absence of notice, and which, perhaps, is the most important element in such plea? Could this irresistible obligation of W. Holmes Hardin to pay the purchase money voluntarily assumed by himself, in face of the fact that he knew of the judgment, wipe out that knowledge, and enable him to say that he had no such information ? We cannot understand this. As matter of fact, his honor found that Hardin had the knowledge, and from this finding there has been no appeal, and we can see no reason whatever why this knowledge would not have its legitimate effect of defeating the plea of *bona fide* purchaser without notice.

But, again, even upon the supposition that his honor was correct, could such a plea avail against a judgment legally valid and having lien on the property, as his honor found as matter of law this judgment to be? In response to this, we need only cite *Blake* v. *Heyward*, *Bail. Eq.*, 220, in which the following language is used : "The decree having a legal lien on the whole of the testator's real estate, it is unnecessary to consider the question made in the defence set up, of purchaser for a valuable consideration without notice. The purchaser took subject to a legal lien, and is liable to be divested by a sale under the decree. The complainant has a legal title to enforce his decree, and the defendants have but an equity to oppose it, and he must, of course, fail. The plea of purchaser for a valuable consideration without notice can never prevail against a legal title to which there is no obstacle to a recovery at law. It is only a protection against an equity." This was said in a case in which a decree in equity for

the payment of money was claimed to be enforced against a *bona fide* purchaser without notice. Here a judgment at law, with a valid lien, as held by his honor, is attempted to be enforced as against one who makes the same defence as above. We think *Blake* v. *Heyward, supra,* is conclusive, even upon the assumption that the defence claimed is made out. See, also, *Lowndes* v. *Pinckney,* 2 *Strob. Eq.,* 47.

This brings us to the respondent's grounds. He contends, 1st, that the Wright judgment never had lien on the Chester property on account of the defects mentioned, and that the decree perpetuating the injunction may be sustained on that ground. In the case of *Ann E. Wright, executrix,* v. *Clark* (19 *S. C.,* 498), the question involved was whether the Wright judgment was a judgment against the estate of the deceased debtor and entitled to priority from its date in the administration of the assets by the administrator, and the question raised here, it is true, was not directly and distinctly presented, nor was it so decided. But in discussing the subject of the defects, the court to some extent considered the general effect of the omission of the clerk to date and sign the formula which had been lodged, and intimated, at least, that in view of the fact that said judgment had been entered in the "Book of Abstracts of Judgments" with the date, the amount, the names of the parties, &c., &c.. also enrolled—in fact, everything complete except the omissions stated—that it was a valid judgment, even as to third parties. On this subject the court said: "And even as to third parties, while the date and the official signature of the clerk would best authenticate the judgment and put it beyond dispute, yet as to its effect as notice, the filing is the main matter; when entered and filed in the proper office, its existence could be as well ascertained without the date and signature as with them. The entering and filing are the essential facts, and whether this had taken place at a particular time could be discovered by an examination of the office as certainly where the formula had not been dated and signed as if these things had been done." And again: "The act of 1839 does not declare that judgments not dated and signed shall be void; it simply directs the clerk to date and sign. * * * It would be a most stringent construction to hold that because of such omission the whole pro-

ceeding was void." And especially so, we would add, when all other requirements had been complied with, to wit, entry in the book of Abstracts of Judgments, enrolment, &c., &c. "This we cannot suppose was the object of the act. On the contrary, we are of opinion that the omission here was a mere irregularity in a matter not vital to the judgment, but simply directory to the clerk, and may be corrected at any time"—citing *Farrar's Administrator* v. *Carmichael*, 1 *Brev.*, 392; and *Harrison* v. *Manufacturing Company*, 10 *S. C.*, 290.

But because of the fact that this question was not directly involved in this previous case, we have listened to and considered the argument made here on it as upon a new proposition. We, however, see no reason to change our opinion as then intimated. The object of the act in requiring the formulated judgment to go into the clerk's office was to give notice to the world of the lien which had been established, so that third parties might deal with it without peril, and also to enable the judgment creditor to make his money by *fi. fa.* We cannot see how these objects would be interfered with by the omission on the part of the clerk to date and sign this formula when it was lodged, enrolled, and entered in the Abstracts of Judgments with date, amount, and all other requisites. As was said in the other case, it could have been as easily found upon an examination of the office without the date and signature as with them. The act of 1712, or statute of frauds, we do not think has any application to this case. That was intended to prevent judgments from dating back to the term as to intermediate purchasers when entered afterwards. This case, we think, turns upon the act of 1839 as to the duties of the clerk.

The respondent contends, secondly, that if the judgment ever had lien, it was lost when it was established against the estate of the deceased debtor under the call for creditors by the doctrine of merger. It may be true that when a judgment creditor comes in under such a call, that his lien on the assets being administered, the proceeds of property over which he may have a lien or otherwise may be regarded as abandoned, but he is compensated by being entitled to be paid according to the date of his judgment, and, therefore, is no way injured. But to say that his lien over all of the property of the debtor, real and personal, whether the

subject of administration or not, is also lost, is a startling proposition, and one which we think is without support in the decided cases. The cases of *Manigault* v. *Deas*, *Bail. Eq.*, 297, and *Boyce* v. *Boyce*, 5 *Rich. Eq.*, 263, relied on by respondent, do not go to this extent.

A third ground of respondent is, that the payment of $500 by the clerk of the court to Mrs. Wright for his omission of duty estops the claim that the judgment had lien. We cannot agree to this. If the judgment had lien notwithstanding the default of the clerk, we do not understand how the payment of the $500 by the clerk could vacate it. The clerk seems to have paid this voluntarily and without suit, and it may be that he was not responsible. At all events, this was a matter between himself and Mrs. Wright, and with which the Hardins had no concern. They had bought before this.

Fourth. Respondent contends "that if any lien existed under the Wright-Melton judgment, the conduct of Mrs. Wright and her attorney, Maj. Hart, would estop her, and does estop M. B. Melton, her assignee, from enforcing the same." And the facts are detailed in the argument of counsel upon which this position is based. Among these facts we find : That shortly after G. W. Melton had conveyed the property to trustees for his wife and children, Mrs. Wright caused a levy to be made to the end of enforcing the lien of her judgment. A bill was filed by the trustees to restrain this sale. The plaintiff took a non-suit on his motion upon the Circuit Judge expressing the opinion that they had no cause of action, for the reason that, in his opinion, Mrs. Wright could not sell the land. To this the attorney of Mrs. Wright protested. After this the trustees sold to W. Holmes Hardin without warranty, Mr. Hardin being informed by Mr. McLure of the cloud of the judgment. But Mrs. Wright in no way contributed to this sale. Shortly after, Holmes Hardin sold to the plaintiff without any agency of Mrs. Wright. Mrs. Wright had her judgment revived twice after the above purchases, and when the creditors of the estate of Melton were called in under the action instituted by his administrator long after said purchases, the judgment was presented and payment claimed. In the meantime, the opinion being entertained by many that the

judgment was not a valid judgment so as to bind this property, Mrs. Wright, through her attorney, claimed damages from the clerk, and was paid $500.

Now, what is there in these facts to constitute an estoppel, for the protection of a purchaser who purchased before most of them occurred and without any consultation with Mrs. Wright? An estoppel by conduct is some act which the party estopped ought not to have done, or some omission to act when he ought to have acted, misleading the party claiming the protection, and which induced him to his injury to take the step attempted to be vacated. Wherein did Mrs. Wright or her attorney mislead W. Holmes Hardin or the plaintiff in their purchases? She seems to have been persistent, from the beginning to the end, in trying to enforce the collection of her judgment. First, she levied on the land, and protested through her attorney that the plaintiff in the bill which they filed to restrain her sale thereunder should take a nonsuit on the ground stated; then she had the judgment renewed twice; then she presented it at the proposed settlement of the estate; then an effort was made to compel her to follow the trust fund, the proceeds of the land, which was decided could not be done. In what way have the Hardins been injured by anything done by her? What act of hers, or what omission to act, induced either of them to buy the land? None whatever. W. Holmes Hardin bought, relying entirely upon the opinion of others than Mrs. Wright. He inquired as to the title, and being advised that it would be good notwithstanding the cloud over it, he purchased, and that, too, without warranty. He has been unfortunate, but we do not see that he has any cause to complain of Mrs. Wright. We think that Mrs. Mary B. Melton, her assignee, stands in her shoes, and has all of her rights.

It is the judgment of this court, that the judgment below be reversed.

The plaintiff filed a petition for rehearing, upon which the following order was passed, May 5, 1888,

PER CURIAM. To entitle a party to a rehearing after judgment pronounced by this court, it should appear in the petition filed for that purpose that this court overlooked some fact or some

question of law material to the case, as presented by the appeal. Now, the only question mentioned in the petition as having been overlooked by this court is the third herein, to wit: "That the fund in the hands of W. A. Clark, administrator of C. D. Melton, should be adjudged primarily liable for the satisfaction of the Wright judgment." It is conceded that the Circuit Judge did not pass upon this question. Nor is it stated in the "Case" as a ground upon which respondent would undertake to sustain the Circuit decree. Nor is any error alleged to the Circuit Judge in failing to consider and adjudge said question. It is true, one of respondent's counsel, Mr. Glenn, in his argument contended that said fund should be first applied to said judgment before the land in question should be made liable. But this did not raise the question for review by this court, said court being confined to the correction of errors below. We may say, however, that had this question been properly before us, under the case of *McAliley* v. *Barber* (4 *S. C.*, 47), it could not have availed the respondent.

As to the other ground upon which the petition is based. It is manifest that this is nothing more than to have a question already fully considered by this court reargued, which this court has uniformly held cannot be done, except as stated above, where either a question of law or a fact material to the case and appearing in the record has been overlooked.

It is ordered, that the petition be dismissed.